**BURRIS, NISENBAUM, CURRY, AND LACY LLP**
JOHN L. BURRIS, Esq. (SBN 69888)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (844) 273-6873
john.burris@johnburrislaw.com

**BURRIS, NISENBAUM, CURRY, AND LACY LLP**
DeWITT M. LACY, Esq. (SBN 258789)
JULIA N. QUESADA, Esq. (SBN 337872)
LENA P. ANDREWS, Esq. (SBN 342471)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile: (844) 273-6873
dewitt@bncllaw.com
julia.quesada@bncllaw.com
lena.andrews@bncllaw.com

Attorneys for Plaintiffs,
Norman Gainer, Sharon Haywood
Rebecca Gainer, and William Roper

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN GAINER, individually and as Successor-in-Interest to Decedent Ryan Gainer; SHARON HAYWOOD, individually and as Successor-in-Interest to Decedent Ryan Gainer; REBECCA GAINER, an individual, and WILLIAM ROPER, an individual,<br><br>     Plaintiffs,<br><br> vs. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>42 U.S.C. § 1983: Fourth and Fourteenth Amendments<br>42 U.S.C. § 12132: Title II of the ADA<br>29 U.S.C. § 794: Section 504 of the Rehabilitation Act |

COUNTY OF SAN BERNARDINO, a
municipal entity; BRANDON
CLANCY, individually and in his
official capacity as Sheriff's Deputy for
the San Bernardino County Sheriff's
Department; and WYATT
EISENBREY, individually and in his
official capacity as Sheriff's Deputy for
the San Bernardino County Sheriff's
Department, and DOES 1 through 50,
inclusive, individually and in official
capacity as deputies for the County of
San Bernardino Sheriff's Department,

        Defendants.

Cal. Civ. Code § 52.1
Pendent Tort Claims

**<u>JURY TRIAL DEMANDED</u>**

## **INTRODUCTION**

1.    This civil rights case arises out of the egregious shooting and killing of 15-year-old, Ryan Gainer, an African American boy with Autism, by San Bernardino County Sheriff's Department Deputies, Brandon Clancy and Wyatt Eisenbrey, as well as the heinous mistreatment of the Gainer Family by San Bernardino County Sheriff's Deputies thereafter. On March 9, 2024, Ryan was at home with his family and became upset after his dad, Norman Gainer, told Ryan that he could not play video games until his chores were finished. Ryan's demeanor changed and a mental health episode ensued. Lashing out in frustration, Ryan broke the glass on the front door and hit his sister, Rebecca, on the arm. Ryan's mom, Sharon Haywood, called 911 for help, as the family had done on five other occasions without incident. Before any law enforcement responded to the Gainer Family home, Ryan apologized to Rebecca and his family for his behavior. Ryan's cousin, William Roper, and Ryan's sister, Rebecca Gainer, made a second call to 911, advising dispatch that Ryan was calming down and the family no longer needed assistance.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

2.      Thereafter, San Bernardino County Sheriff's Deputies, Brandon Clancy and Wyatt Eisenbrey, arrived at the Gainer Family home. Without hesitation, one of the deputies got out of the patrol car and went straight toward the open front door without his partner. As the deputy approached the front door, he shouted into the house "where's he at?" Mr. Gainer observed Ryan become startled by the deputy's unexpected presence and announcement. Mr. Gainer informed the deputy, "he's coming. He's got a stick." Moments later, Ryan appeared from inside the house, heading toward the front door holding a frying pan in one hand and a gardening tool (determined to be a hula hoe) in the other.

3.      The deputy appeared panicked and unprepared as Ryan made his way out the front door. The deputy immediately drew his firearm and took a shooter's stance. With his gun aimed directly at Ryan, the deputy shouted, "get back or you're getting shot!" Ryan continued toward the armed deputy. The deputy then turned his back to Ryan and started moving in the opposite direction still holding his firearm. The same deputy then suddenly started to turn around toward Ryan. With the firearm in his right hand, the deputy looked over his right shoulder, extended his right arm and fired his weapon at Ryan. A second armed deputy standing in the driveway also took aim at Ryan. The San Bernardino County Sheriff's Deputies fired at least four times. Ryan was struck by three bullets and collapsed in the front yard in front of his parents, Norman Gainer and Sharon Haywood, his sister, Rebecca Gainer, and his cousin William Roper.

4.      In complete horror, disbelief, and heartbreak, Ryan's mom, Sharon, cried out from her wheelchair "you shot my baby!" The Gainer Family begged the deputies to let them give aid to Ryan, who was bleeding immensely but still visibly conscious and gasping for breath. The Gainer Family remained in the front yard watching as their beloved Ryan struggled to breathe.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

5.    Thereafter, at least seven patrol cars arrived at the Gainer Home and started to apply police tape around the vicinity. After a considerable amount of time passed, an ambulance arrived. Life saving measures were attempted but rendered unsuccessful. Ryan died from his injuries, but the information was not disclosed to the family until several hours later.

6.    Sharon Haywood, Rebecca Gainer, and William Roper were forced to give statements under the threat of arrest and held in custody for several hours without acknowledgment of Ryan's death.

7.    The conduct engaged in by the San Bernardino County Sheriff's Department against 15-year-old Ryan, his mom, Sharon, sister, Rebecca, and cousin, William, is unacceptable and entirely unreasonable. The Deputies' conduct toward the Gainer Family thereafter was despicable, inhumane, and intolerable. Such conduct is thereby unconstitutional.

8.    This wrongful death and disability rights action seeks compensatory and punitive damages from Defendants, in addition to declaratory and injunctive relief for violating various rights under the United States Constitution and California state law, in connection with the unjustified use of force against persons with disabilities, resulting in the death of Ryan Gainer and life-altering injuries to Sharon Haywood, Rebecca Gainer, and William Roper.

## JURISDICTION AND VENUE

9.    This action arises under Title 42 of the United States Code, § 1983. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law. The unlawful acts and practices alleged herein occurred in the City of Apple Valley, County of San Bernardino, California, which is within the judicial district of this Court. The same actions and omissions that form the basis of Plaintiffs' federal claims, form the basis of their state law claims. Thus, this Court also has supplemental jurisdiction over Plaintiffs' state law

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

10.   Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because Plaintiffs reside in, and Defendants operate and perform official duties in San Bernardino County, and are believed to reside in this district. All incidents, events, and occurrences giving rise to this action also occurred in San Bernardino County, which is within this district.

## **PARTIES**

11.   Decedent RYAN GAINER (hereinafter "Ryan") was a fifteen-year-old, African American boy with Autism, residing in the State of California. Ryan, a minor, died intestate and did not file any legal actions prior to his death. To the extent that this action seeks to recover damages for the violation of rights personal to Decedent Ryan, this action is maintained by his Successors-in-Interest, Norman Gainer and Sharon Haywood. Said Plaintiffs are Ryan's parents by legal adoption, respectively, and have standing to bring this action as Ryan was unmarried, a minor, and their dependent at the time of his death.

12.   Plaintiff NORMAN GAINER (hereinafter "Plaintiff Norman") is and was at all times mentioned herein, the legally adoptive father of Decedent Ryan. Plaintiff Norman sues as Decedent Ryan's successor-in-interest.

13.   Plaintiff SHARON HAYWOOD (hereinafter "Plaintiff Sharon") is and was at all times mentioned herein, the legally adoptive mother of Decedent Ryan. Plaintiff Sharon sues as Decedent Ryan's successor-in-interest and in her individual capacity.

14.   Plaintiff REBECCA GAINER (hereinafter "Plaintiff Rebecca") is and was at all times mentioned herein, the biological daughter of Plaintiffs Norman

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

Gainer and Sharond Haywood, and the legally adoptive sister of Decedent Ryan. Plaintiff Rebecca sues in her individual capacity.

15. Plaintiff WILLIAM ROPER (hereinafter "Plaintiff William") is and was at all times mentioned herein, the nephew of Plaintiffs Norman Gainer and Sharon Haywood, and cousin of Plaintiff Rebecca Gainer and Decedent Ryan. Plaintiff William sues in his individual capacity.

16. Defendant BRANDON CLANCY (hereinafter "Defendant Clancy") is and was at all times mentioned herein, a deputy for the San Bernardino County Sheriff's Department, and is sued individually and in his official capacity.

17. Defendant WYATT EISENBREY (hereinafter "Defendant Eisenbrey") is and was at all times mentioned herein, a deputy for the San Bernardino County Sheriff's Department, and is sued individually and in his official capacity.

18. Defendant COUNTY OF SAN BERNARDINO (hereinafter "Defendant County") is and was at all times mentioned herein, a municipal entity or political subdivision of the United States, organized and existing under the laws of the State of California; and at all times mentioned herein, Defendant County has possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting the operation of the County of San Bernardino Sheriff's Department and its tactics, methods, practices, customs, and usage. At all relevant times mentioned herein, Defendant County is and was the employer of Defendants CLANCY, EISENBREY, and DOES 1 through 50, inclusive, (hereinafter, collectively, "Defendant Deputies"), individually and in their official capacities as deputies for the County of San Bernardino Sheriff's Department.

19. Plaintiffs are ignorant of the true names and capacities of those Defendants named herein as DOES 1 through 25, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

to Plaintiffs. Plaintiffs are informed and believe, and thereon allege, that DOES 1 through 25, inclusive, are legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, or willful misconduct, including the negligent, careless, deliberately indifferent, intentional, willful misconduct in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged. Plaintiffs will seek to amend this Complaint to set forth said true names and identities of DOES 1 through 25, inclusive, when they have been ascertained.

20.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 26 through 50, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each Defendant so named was employed by Defendant County at the time of the conduct alleged herein. Plaintiffs allege that each of Defendants DOES 26 through 50 were responsible for the training, supervision and/or conduct of the deputies and/or agents involved in the conduct alleged herein. Plaintiffs allege that each of the Defendants DOES 26 through 50 were also responsible for and caused the acts and injuries alleged herein. Plaintiffs will amend this Complaint to state the names and capacities of DOES 26 through 50, inclusive, when they have been ascertained.

## ADMINISTRATIVE PREREQUISITES

21.    Plaintiffs are required to comply with the administrative procedures set forth in the California Government Claims Act. Plaintiffs Norman Gainer, Sharon Haywood, Rebecca Gainer, and William Roper filed Claims against the County of San Bernardino on March 13, 2024.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

22.     The County of San Bernardino rejected Plaintiffs' claims on April 2, 2024.

23.     Plaintiffs therefore exhausted all administrative remedies pursuant to section 910 of the California Government Code.

## PRELIMINARY ALLEGATIONS

24.     The County of San Bernardino is a public entity and is being sued under Title 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments of the United States Constitution, California state law, the California Tort Claims Act, and the Government Code, for the acts and omissions of Defendants Clancy and Eisenbrey, including DOES 1 through 50, and each of them, who at the time they caused Decedent's and Plaintiffs' injuries and damages, were duly appointed, qualified and acting, officers, employees, and/or agents of Defendant County, and acting within the course and scope of their employment and/or agency.

25.     Moreover, Defendant County is a public entity for purposes of Title II of the ADA and receives both state and federal assistance such that it is subject to Section 504 and California Government Code § 11135. Defendant County is sued in its own right and on the basis of the acts and/or omissions of its officials, agents and employees, including those associated with the County of San Bernardino Sheriff's Department. Under law, including California Government Code § 815(a), the County is liable for the unlawful tortious acts hereinafter complained of, including those violating state law and committed by the Sheriff's Department entity and its employees acting within the course and scope of their employment.

26.     Each of the Defendants caused and is responsible for, the unlawful conduct and resulting harm by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating, or failing to promulgate, policies and procedures pursuant to which

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

the unlawful conduct occurred, by failing and refusing to initiate and maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents, officers, deputies, medical providers and employees under their direction and control.

27.    Whenever and wherever reference is made in this Complaint to any act by Defendants DOE Deputies and DOES 1 through 50, such allegations and references shall also be deemed to mean the acts, and failures to act, of each Defendant DOE Deputy, individually, jointly, or severally.

## GENERAL ALLEGATIONS

28.    On March 9, 2024, at approximately 4:00 p.m., Decedent Ryan Gainer, a 15-year-old autistic, African American boy, was experiencing a mental health episode, during which he hit his sister, Plaintiff Rebecca Gainer, on the arm and broke glass on the family home's front door. In response, Plaintiff Sharon Haywood, Ryan's mom, called 911 for assistance. Ryan seemed to calm down and apologized to his sister, Rebecca, for hitting her arm, and to his family for breaking the glass on the door. Ryan's cousin, Plaintiff William Roper, then called 911 a second time to advise that Decedent Ryan was calming down. Plaintiff Rebecca joined the follow up call to 911 dispatch with Plaintiff William. Nonetheless, deputies were already en route responding to the residence despite Plaintiffs' notice to Defendant San Bernardino County Sheriff's Department.

29.    When Defendant Deputies Clancy and Eisenbrey arrived on scene and began to approach the residence, neighbors from across the street began yelling, trying to warn the deputies not to shoot the autistic teen. A Defendant Deputy then began to make entrance into the residence, announcing "where is he?" The announcement startled Decedent Ryan, who turned and began making towards the door. As Ryan entered the hallway in viewpoint of the Defendant Deputy, the deputies drew their weapons and shouted orders at Decedent Ryan, who was walking

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

1  toward the deputies with a hula hoe in hand. Defendant Deputies told Ryan to stop
2  or he would be shot. The first deputy then turned away from Ryan, but Decedent
3  Ryan continued moving toward the deputy. Four bullets were fired at Ryan by
4  deputies, striking Ryan three times.

5       30.    Following the shooting, Plaintiff Sharon Haywood, Ryan's wheelchair-
6  bound mother, cried out to the deputies, "why did you shoot my baby?" In response,
7  Defendant DOE Deputies pointed their weapons at family members and neighbors,
8  including Plaintiffs Sharon Haywood, Norman Gainer, Rebecca Gainer, and William
9  Roper, who were merely offering lifesaving aid to Ryan. Defendant DOE Deputies
10 continued ignoring Ryan for approximately 5-10 minutes while he vomited and
11 choked. Plaintiff Sharon suffered multiple seizures at the scene due to the stress of
12 witnessing the incident.

13      31.    Thereafter, as many as seven additional marked Sherriff vehicles
14 arrived at the scene before an ambulance. EMT's eventually arrived on scene and
15 attempted to resuscitate Ryan's lifeless body. Ryan was then transported in an
16 ambulance and later pronounced dead.

17      32.    Following this, Plaintiff Sharon continued experiencing seizures at the
18 scene of the incident. Plaintiff Rebecca, Plaintiff Sharon's caretaker, was attempting
19 to provide aid when Defendant DOE Deputy grabbed Plaintiff Rebecca and carried
20 her approximately 30 feet away from Plaintiff Sharon, who was amidst a medical
21 emergency. Approximately 7-8 Defendant DOE Deputies then attempted to lift
22 Plaintiff Sharon off the concrete floor and place her in her wheelchair, while Plaintiff
23 Sharon continued to cry out in pain. Defendant DOE Deputies then dropped Plaintiff
24 Sharon on the concrete floor. Thereafter, an additional deputy grabbed Plaintiff
25 Sharon's wheelchair, which was only a few feet away from her at the time and
26 moved it onto a gravel surface approximately 30 feet from where she was dropped.
27 Defendant DOE Deputies then grabbed Plaintiff Sharon by the arms and legs, one
28

deputy each carrying a limb, and attempted to force her into the wheelchair again while she cried out in pain. Once again, Plaintiff Sharon fell from the wheelchair, this time onto the gravel floor. Defendant DOE Deputies then grabbed Plaintiff Sharon off the floor, again one deputy each carrying a limb, and transported her into the back of a Sherrif's vehicle with her breasts exposed to the public.

33.   Plaintiffs Sharon Haywood, Rebecca Gainer, and William Roper were then forced to give statements under the threat of arrest and were held in custody for several hours without acknowledgment of Decedent Ryan's death.

34.   Plaintiffs are informed and believe, and thereon allege, that Defendants Clancy, Eisenbrey, and DOES 1-25, proceeded to use excessive and deadly force against Ryan without legal justification, and to assault and batter Decedent Ryan through acts that include but are not limited to, unjustifiably discharging several rounds from a department-issued firearm at Ryan. Even after Plaintiffs notified dispatch that Ryan had calmed down and no longer posed a credible threat to any family member, Defendants Clancy and Eisenbrey proceeded to respond to the Gainer Family Home. Moreover, Defendants Clancy, Eisenbrey, and DOE Deputies, flagrantly disregarded their training, improperly assessed the situation, and rushed the mental health service call without backup or a plan in place. The use of lethal force against Ryan by Defendants Clancy and Eisenbrey was avoidable and grossly excessive under the circumstances. Such conduct is unconstitutional.

35.   Plaintiffs are informed and believe, and thereon allege, that upon arriving at 13400 Iroquois Rd., Apple Valley, CA 92308, Defendants Clancy, Eisenbrey, and DOES 1-25, while acting under the color of state law, and in the course and scope of his employment with the Defendant County of San Bernardino Sheriff's Department, negligently assessed the circumstances presented to them when Defendants Clancy, Eisenbrey, and DOES 1-25, came into contact with Ryan, a fifteen-year-old boy known to have Autism, and the Gainer Family.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

36.    At no time during the Deputies' encounter with Ryan, did Ryan pose any reasonable or credible threat of violence to Defendants Clancy, Eisenbrey, or other, nor did he do anything to justify the deadly force used against him.

37.    Plaintiffs are informed and believe, and thereon allege, that Defendant DOE Deputies proceeded to use excessive force against Plaintiffs Sharon Haywood and Rebecca Gainer without legal justification, and to assault and battery Plaintiffs Sharon and Rebecca through acts that include but are not limited to, physically removing Plaintiff Rebecca away from the yard and her wheelchair bound mother and carrying Plaintiff Sharon by her limbs and shoving her into the back of a patrol car without her wheelchair or medical aid. Even after Defendants Clancy and Eisenbrey shot Ryan numerous times in the Gainer Family's front yard, Defendant DOE Deputies proceeded to mistreat the Gainer Family as if they were violent criminals and took actions that were not only inhumane but unconscionable at its core. Moreover, Defendant DOE Deputies flagrantly disregarded their training, improperly assessed the situation, and failed to follow protocols for encountering persons with disabilities without safety precautions or a plan in place. Defendant DOE Deputies' use of force against Plaintiffs was despicable and grossly unreasonable under the circumstances. Such conduct is unconstitutional.

38.    Plaintiffs are informed and believe, and thereon allege, that after Defendants Clancy and Eisenbrey, fatally shot Ryan in the front yard of the Gainer Family Home, Defendant DOE Deputies, while acting under the color of state law, and in the course and scope of his employment with the Defendant County of San Bernardino Sheriff's Department, negligently assessed the circumstances presented to them when Defendant DOE Deputies physically grabbed Plaintiff Rebecca Gainer, lifted her off the ground, and carried her away from her family and placed her beyond the driveway.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

39.    At no time during the Deputies' encounter with the Gainer Family subsequent to the fatal shooting of Ryan, did Plaintiff Rebecca Gainer pose any reasonable or credible threat of violence to Defendant DOE Deputies or other, nor did she do anything to justify the physical restraint and removal by Defendant DOE Deputies from the front yard of her family home and displaced from her wheelchair bound mother, Plaintiff Sharon Haywood, nor did she do anything to warrant the gross mistreatment by the deputies.

40.    Plaintiffs are informed and believe, and thereon allege, that after Defendants Clancy and Eisenbrey fatally shot Ryan in the front yard of the Gainer Family Home, Defendant DOE Deputies, while acting under the color of state law, and in the course and scope of his employment with the Defendant County of San Bernardino Sheriff's Department, negligently assessed the circumstances presented to them and acted with deliberate indifference and a willful disregard when Defendant DOE Deputies, tilted Plaintiff Sharon Haywood's wheelchair until she fell from seat and hit the cement, failed to ensure the safety of a visibly disabled person by taking the necessary precautions for handling disabled persons, failed to summon medical aid despite the numerous seizures that occurred in the deputies' presence and injuries sustained from hitting the cement, denied access to her wheelchair, carried her by her limbs with deputies holding each leg and arm, forced her into the back of the patrol car for an unknown number of hours, transported her to the station against her will, and forced her to give a statement under the threat of arrest.

41.    At no time during the Deputies' encounter with the Gainer Family after the fatal shooting of Ryan, did Plaintiff Sharon Haywood pose any reasonable or credible threat of violence to Defendant DOE Deputies or other, nor did she do anything to justify the heinous and inhumane treatment she was subjected to by Defendant DOE Deputies.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

42.     Moreover, Plaintiffs Sharon Haywood and Rebecca Gainer made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable sheriff's deputy that they had the will, or the ability, to inflict substantial bodily harm against any individual at the time Defendant DOE Deputies encountered them. Furthermore, Defendant DOE Deputies were never faced with any circumstances during the encounter with Ryan which would have led a reasonable sheriff's deputy to believe that Decedent posed a risk of death or serious bodily injury to any person at the time lethal force was used.

43.     After a significant and appreciable period of time had passed following the shooting, Ryan died as the direct and proximate result of the gunshot wounds inflicted by Defendant DOE Deputies.

44.     Plaintiffs are informed and believe, and thereon allege, that Defendants DOES 26-50, inclusive, breached their duty of care to the public in that they have failed to discipline Defendants Clancy, Eisenbrey, and DOES 1-25. Their failure to discipline Defendants Clancy, Eisenbrey, and DOES 1-25, inclusive, demonstrates the existence of an entrenched culture, policy and/or practice, of promoting, tolerating and/or ratifying with deliberate indifference, the making of improper detentions and arrests of all citizens, including improper detentions and arrests of persons with disabilities, and the use of excessive and/or deadly force against San Bernardino County citizens.

45.     Plaintiffs are informed and believe, and thereon allege, that members of the County of San Bernardino Sheriff's Department, including but not limited to, Defendants Clancy, Eisenbrey, and DOES 1-50, and/or each of them, have individually and/or while acting in concert with one another, engaged in a repeated pattern and practice of using excessive, arbitrary and/or unreasonable force against individuals and persons with disabilities, including but not limited to, Decedent Ryan and Plaintiff Sharon.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

46.     Plaintiffs are informed and believe, and thereon allege, that the County of San Bernardino Sheriff's Department knew or had reason to know by way of actual or constructive notice, of the aforementioned policy, culture, pattern and/or practice, and the complained of conduct and resultant injuries/violations.

47.     Plaintiffs also suffered extreme psychological distress and injury as a result of this ordeal. Plaintiffs suffered and still suffer from symptoms including, but not limited to, fear, trauma, anxiety, stress, depression, humiliation, and emotional distress as a result of the incident.

48.     During the incident, Defendants Clancy, Eisenbrey, and DOES 1 through 25, inclusive, worked together as a group to back each other up, provide tacit approval for the incident, and support, assist, and encourage one another's actions.

49.     Moreover, each of the Defendant DOE Deputies failed to intervene or prevent harm when his or her colleagues were depriving Decedent Ryan and Plaintiffs of their constitutional rights as stated in this Complaint. By failing to intervene, each of the Defendant DOE Deputies additionally violated Decedent's and Plaintiffs' constitutional rights.

50.     Plaintiffs are informed and believe, and thereon allege, that Defendants violated standard police practices and training during the performance of their duties as San Bernardino County Sheriff's Department Deputies.

51.     Plaintiffs are informed and believe, and thereon allege, that Defendants Clancy, Eisenbrey, and DOE Deputies failed to maintain situational awareness and improperly assessed the circumstances presented. On information and belief, Defendants Clancy and Eisenbrey failed to consider the dangers of their actions when lethal force was used against a fifteen-year-old boy known to have autism after Defendants Clancy and Eisenbrey failed to follow their training protocols for contacting persons with disabilities, and further failed to consider the dangers of

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

their actions when Plaintiff Rebecca Gainer was physically carried away from her front yard and wheelchair bound mother without warning and Plaintiff Sharon Haywood was removed from her wheelchair, carried by her limbs, and forced into the back of the patrol car without warning.

52.     On further information and belief, Defendant DOE Deputies failed to consider the dangers of their actions when they held Plaintiffs Norman Gainer, Sharon Haywood, Rebecca Gainer, and William Roper at gunpoint, demanded they provide statements at the sheriff's station, and threatened their arrest for noncompliance.

53.     The actions and omissions of Defendant County and Defendants Clancy, Eisenbrey, and DOES 1 through 50, inclusive, were objectively unreasonable under the circumstances, without legal justification or other legal right, done under color of law, within the course and scope of their employment as law enforcement officers, detectives, and/or public officials of Defendant County and/or other jurisdictions.

54.     At all material times, the actions and omissions of each Defendant were conscience-shocking, reckless, and deliberately indifferent to Decedent's and Plaintiffs' rights, and in the alternative, negligent and objectively unreasonable.

## **DAMAGES**

55.     As a consequence of Defendants' violations of Decedent's and Plaintiffs' federal civil rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments, federal disability rights under 42 U.S.C. § 12132, Plaintiffs were mentally and emotionally injured and damaged as a proximate result of Decedent's wrongful death, and the unjustified infliction of force against them, which includes but is not limited to, Plaintiffs' loss of familial relations, the loss of Decedent's

society, comfort, protection, companionship, love, affection, solace, and financial and moral support, and Decedent's loss of enjoyment of life.

56.     Plaintiffs found it necessary to engage the services of private counsel to vindicate the rights of Decedent and Plaintiffs under the law. Plaintiffs are therefore entitled to an award of attorneys' fees and/or costs pursuant to statute(s) in the event that they are the prevailing party in this action under 42 U.S.C. § 1983 and 1988.

### FIRST CAUSE OF ACTION
**(42 U.S.C. § 1983)**
**(Violation of the Fourth Amendment of the U.S. Constitution –**
**Excessive Force)**
**(Plaintiffs SHARON HAYWOOD and REBECCA GAINER, individually,**
**and Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as**
**Successors-in-Interest to Decedent Ryan Gainer Against Defendants**
**BRANDON CLANCY, WYATT EISENBREY,  and DOES 1-25)**

57.     Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 56 of this Complaint.

58.     One of the foregoing claims for relief arose in Decedent's favor and Decedent would have been a Plaintiff with respect to this claim if he had survived.

59.     Two of the foregoing claims for relief are brought individually by Plaintiffs Sharon Haywood and Rebecca Gainer.

60.     42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

61.    Decedent Ryan had firmly established rights under the Fourth Amendment to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, and to be free from excessive and deadly force being used against him.

62.    Plaintiffs Sharon Haywood and Rebecca Gainer have firmly established rights under the Fourth Amendment to be free from official infliction of physical abuse, assault, battery, and intentional infliction of emotional distress, unreasonable search and seizure, and to be free from excessive force being used against them.

63.    Defendants' actions as described herein resulted in the deprivation of these constitutional rights.

64.    While acting in the performance of their official duties, Defendants Clancy and Eisenbrey used deadly force against Ryan by discharging their firearms at least three (3) times, intentionally striking and killing Ryan. Such use of deadly force was excessive, unreasonable, and avoidable under the circumstances. Defendants Clancy and Eisenbrey knew or should have known that they were encountering a fifteen-year-old boy with autism. Nevertheless, Defendants Clancy and Eisenbrey approached the home without a plan, ignored basic training of P.O.S.T., startled the autistic teenager by shouting into the Gainer Family home, and resorted to deadly force after the situation escalated by Defendants Clancy's and Eisenbrey's reckless conduct.

65.    Decedent Ryan posed no immediate, credible threat of harm to Defendants Clancy and Eisenbrey, or any other deputy or individual, when he was shot and killed. Defendants' use of deadly force was unjustified under the totality of the circumstances and deprived Decedent of his right to be secure in his person against unreasonable searches and seizures, as guaranteed to him under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment of the United States Constitution.

66.     Moreover, after Defendants Clancy and Eisenbrey fatally shot Ryan in front of his family, Defendant DOE Deputies, while acting in the performance of their official duties, used unreasonable force against Plaintiff Rebecca Gainer by physically lifting her off the ground against her will and displacing her from her wheelchair bound mother. Such use of force was excessive, unreasonable, and without warning or provocation.

67.     Plaintiffs Sharon Haywood and Rebecca Gainer posed no immediate, credible threat of harm to Defendant DOE Deputies or any other deputy or individual when excessive force was used against them. Defendants' use of force against Plaintiffs Sharon and Rebecca was unjustified under the totality of the circumstances and deprived Plaintiffs of their right to be secure in their person against unreasonable searches and seizures, as guaranteed under the Fourth Amendment of the United States Constitution and applied to state actors by the Fourteenth Amendment of the United States Constitution.

68.     At no point did any Defendant DOE Deputy intervene to stop Defendants Clancy, Eisenbrey, and DOES 1 through 25, from using deadly force on Decedent, and unreasonable, excessive force against Plaintiffs Sharon and Rebecca, each of which was clearly excessive under the circumstances.

69.     Defendants Clancy and Eisenbrey, and DOES 1 through 25, acting under the color of statute, ordinances, regulations, customs and usages of the State of California, knew that the use of force, including deadly force, in these circumstances was unjustified, and was thereby illegal under clearly established law.

70.     As a result of Defendants Clancy's and Eisenbrey's egregious actions and omissions, Decedent suffered extreme pain and suffering, and eventually suffered a loss of life and the loss of earning capacity. Moreover, Plaintiffs Sharon and Rebecca also suffered extreme pain and suffering by Defendant DOES 1-25. Plaintiffs have been deprived of the life-long love, companionship, comfort, support,

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

society, care, and sustenance of Decedent Ryan, and will continue to be so deprived for the remainder of their natural lives.

71.     Defendants' conduct alleged herein was willful, wanton, malicious, intentional, and deliberate, and was done with reckless disregard for the constitutionally protected rights, welfare, and safety of Decedent and Plaintiffs Sharon and Rebecca.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**(42 U.S.C. § 1983)**
**(Violation of the Fourteenth Amendment of the U.S. Constitution –
Right to Familial Relationship)**
**(Plaintiffs NORMAN GAINER and SHARON HAYWOOD, individually
and as Successors-in-Interest to Decedent Ryan Gainer Against Defendants
BRANDON CLANCY, WYATT EISENBREY, and DOES 1-25)**

72.     Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 71 of this Complaint.

73.     Plaintiffs each had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with their son, Decedent Ryan Gainer.

74.     Decedent had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

75.     As a result of the excessive and deadly force inflicted by Defendants Clancy and Eisenbrey, Decedent died from his injuries. Plaintiffs were thereby deprived of their constitutional right to a familial relationship with their son, Ryan.

76.     Defendants, acting under color of state law, thus violated Plaintiffs' Fourteenth Amendment rights to be free from unwarranted interference with their familial relationship with Decedent Ryan.

77.     The actions and omissions of Defendants Clancy and Eisenbrey, along with other undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, and with purpose to inflict harm, unrelated to any legitimate law enforcement objective.

78.     Defendants, acting under color of state law, thus violated the constitutional rights of Decedent and Plaintiffs, to which they are guaranteed under the Fourteenth Amendment.

79.     As a direct and proximate cause of the acts of Defendants, Decedent experienced severe pain and suffering and lost his life and earning capacity. Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Ryan and will continue to be so deprived for the remainder of their natural lives.

80.     As a result of Defendants' unlawful conduct, they are liable for Decedent's injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

81.     The conduct of Defendants was willful, wanton, and malicious, and done with reckless disregard of the constitutionally protected rights, welfare and safety of Decedent and Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

///
///
///
///

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983)**
**(Monell - Municipal Liability for Unconstitutional Custom or Policy)**
**(Plaintiffs SHARON HAYWOOD and REBECCA GAINER, individually,**
**and Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as**
**Successors-in-Interest to Decedent Ryan Gainer Against Defendants**
**COUNTY and DOES 26-50)**

82.    Plaintiffs hereby reallege and incorporate by reference the allegations set forth in paragraphs 1 through 81 of this Complaint.

83.    On information and belief, the conduct of Defendants Clancy, Eisenbrey, and DOES 1-25, inclusive, individually and as peace officers, was ratified by Defendant County's Sheriff's Department supervisorial officers, Defendants DOES 26-50.

84.    On information and belief, Defendants Clancy and Eisenbrey, and DOES 1-25, were not disciplined for using unjustified deadly force against Decedent Ryan, or for the use of unreasonable, excessive force against Plaintiffs Sharon Haywood and Rebecca Gainer.

85.    Prior to and continuing from, March 9, 2024, Defendants, individually and as peace officers, deprived Decedent and Plaintiffs of the rights and liberties secured to them by the Fourth and Fourteenth Amendments of the United States Constitution, in that said Defendants, and their supervising and managerial commanders, employees, agents, and representatives, acted with gross negligence, and with reckless disregard and deliberate indifference to the rights and liberties of the public in general, and of Decedent and Plaintiffs, and of persons in their class, situation, or comparable position in particular, knowingly maintained, enforced, and applied, an official recognized custom, policy, and practice of:

   a.    Employing and retaining as Sherriff's deputies, detectives, and other personnel, including Defendants Clancy and Eisenbrey, and DOES 1 through 25, individually and as peace officers; who at all material

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

times knew or reasonably should have known, had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written San Bernardino County Sheriff's policies, including the use of excessive and deadly force, and respecting the protections afforded to citizens under the Fourth Amendment;

b.   Inadequately supervising, training, controlling, assigning, and disciplining Defendant County deputies, detectives, and other personnel, including Defendants Clancy and Eisenbrey, and DOES 1 through 25, whom Defendant County knew, or in the exercise of reasonable care should have known, had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force;

c.   Inadequately supervising, training, controlling, assigning, and disciplining Defendant County Sheriff's deputies, detectives, and other personnel, including Defendants Clancy and Eisenbrey, and DOES 1 through 25, in responding to individuals who were mentally impaired or disabled;

d.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct of Defendants Clancy and Eisenbrey, and DOES 1 through 25, who are Sheriff's Deputies of Defendant County;

e.   Failing to discipline Defendant County Sheriff's deputies and/or detectives for their misconduct, including but not limited to, unlawful seizures and excessive and/or deadly force;

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

f.  Ratifying the intentional misconduct of Defendants Clancy and Eisenbrey, and DOES 1 through 25, who are Sheriff's deputies and/or detectives of Defendant County;

g.  Having and maintaining an unconstitutional policy, custom and practice, of detaining and arresting individuals without probable cause or reasonable articulable suspicion, and using excessive force, including deadly force, demonstrated by the grossly inadequate training regarding these subjects. The policies, customs and practices of Defendants were done with deliberate indifference to individuals' rights, safety and welfare; and

h.  Failing to properly investigate claims of unlawful seizures and excessive force by Defendant County Sheriff's deputies and/or detectives.

86.  By reason of the aforementioned policies and practices of Defendants, individually and as peace officers, Decedent sustained severe, life-threatening injuries, was inflicted with pain and suffering, and ultimately, lost his life and earning capacity, when Defendants Clancy and Eisenbrey disregarded their training, ignored protocols for contacting persons with mental disabilities and/or persons in the midst of a mental health crisis, and discharged three lethal rounds at Decedent Ryan, physically carried Plaintiff Rebecca away from her wheelchair bound mother and away from her home against her will, and removed Plaintiff Sharon from her wheelchair, carried her by the limbs and placed her in the back of a patrol car against her will, for which Plaintiffs are entitled to recover damages.

87.  Defendants, individually and as peace officers, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge, as stated above, these Defendants condoned,

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

tolerated, and through actions and inactions, ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, Plaintiffs, and other individuals similarly situated.

88.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants, individually and as peace officers, acted with an intentional, reckless, and callous disregard for the life of Decedent. Each of their actions and inactions was willful, wanton, intentional, oppressive, malicious, fraudulent, extremely offensive and outright unconscionable, to any person of normal sensibilities.

89.    Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by Defendants, individually and as peace officers, were affirmatively linked to, and were the significantly influential force behind, the injuries inflicted upon and suffered by, Decedent and Plaintiffs.

90.    By reason of the aforementioned acts and omissions of Defendants, individually and as peace officers, Plaintiffs were caused to incur funeral costs and related burial expenses, the loss of gifts and benefits, and the loss of financial support.

91.    By reason of the aforementioned acts and omissions of Defendants, individually and as peace officers, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future financial and moral support.

92.    Accordingly, Defendants, individually and as peace officers, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

///

///

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION
### (California Civil Code §§ 377.60 and 377.61)
### (Wrongful Death – Negligence)
### (Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Ryan Gainer Against Defendants BRANDON CLANCY, WYATT EISENBREY, COUNTY, and DOES 1-25)

93.     Plaintiffs hereby reallege and incorporate the allegations set forth in paragraphs 1 through 92 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by Defendants, and any and all allegations requesting punitive damages.

94.     Despite the absence of any credible threat directed towards Defendants Clancy and Eisenbrey or any other deputy or individual at the time deputies encountered Decedent Ryan, Defendant Deputies nevertheless fired their weapons at least three times at Decedent Ryan. Ryan was fifteen years old and known to have autism. Defendant County deputies previously responded to the Gainer Family home on five occasions prior to the subject incident where no issue ensued. Furthermore, Defendants Clancy and Eisenbrey knew or should have known that Ryan had calmed down since the initial 911 call was made by Plaintiff Sharon, where Plaintiffs William Roper and Rebecca Gainer called 911 dispatch to provide the update about Ryan's behavior change.

95.     Defendants Clancy and Eisenbrey failed to make a plan or wait for back up. Defendants Clancy and Eisenbrey failed to follow their training for contacting persons with disabilities and resulted in poor tactics and the loss of Ryan's life.

96.     Decedent died intestate and unmarried. Plaintiffs Norman and Sharon are the legally adoptive parents of Ryan and therefore are the proper persons to sue for his wrongful death under California state law.

97.     Defendants' negligent actions and/or negligent omissions occurred within the course and scope of their employment as Sheriff's deputies for Defendant

County. These actions and omissions, as set forth in the allegations of this Complaint, directly and proximately caused the death of Decedent.

98.   As an actual and proximate consequence of Defendants' negligence, resulting in the death of Decedent and the loss of comfort, society, attention, services, and support of their son, Decedent Ryan, Plaintiffs have sustained pecuniary losses, in an amount according to proof at trial.

99.   As a further consequence, actually and proximately caused by Defendants' negligence, Plaintiffs have incurred funeral and burial expenses, in an amount according to proof at trial.

100.   Pursuant to sections 377.60 and 377.61 of the California Code of Civil Procedure, Plaintiffs have brought this civil rights action, and claim damages from said Defendants, for the wrongful death of Decedent Ryan, and the resulting injuries and damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
**(Violation of California Civil Code § 52.1)**
**(Plaintiffs SHARON HAYWOOD, REBECCA GAINER, and WILLIAM ROPER, individually, and Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Decedent Ryan Gainer Against Defendants BRANDON CLANCY, WYATT EISENBREY, and DOES 1-25)**

101.   Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 100 of this Complaint.

102.   Decedent Ryan was violently confronted by Defendants Clancy and Eisenbrey and subjected to lethal force despite never posing a threat to the safety of Defendant Deputies or any other deputies or individuals. Despite this, Defendant Clancy and/or Eisenbrey shouted at Decedent Ryan which startled and provoked the autistic teen. After killing Decedent Ryan in the front yard of the Gainer Family home and in front of his family members, Plaintiffs Norman Gainer, Sharon

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

Haywood, Rebecca Gainer, and William Roper, Defendant DOE Deputies proceeded to point their firearms at Plaintiffs Norman Gainer, Sharon Haywood, Rebecca Gainer, and William Roper, who were seeking to provide Ryan with lifesaving aid. Defendant Deputies continued ignoring Decedent Ryan for approximately 5-10 minutes while he choked on his own vomit and slowly bled out from the gunshot wounds. Such conduct was in reckless disregard with Ryan's constitutional rights.

103. Defendant DOE Deputies further acted with a reckless disregard to Plaintiff Rebecca's constitutional rights by physically lifting Plaintiff off the ground, carried Plaintiff away from the front yard of her family home, and removed Plaintiff from assisting her wheelchair bound mother.

104. Defendant DOE Deputies acted with a reckless disregard to Plaintiff Sharon's constitutional rights when Plaintiff was removed from her wheelchair and fell onto the cement, when Defendant DOE Deputies inhumanely carried Plaintiff by her limbs to the patrol car, where Plaintiff was forced into the back seat and taken to the station against her will. Defendant DOE Deputies further acted with a reckless disregard to Plaintiff's constitutional rights when Defendant DOE Deputies failed to summon medical care despite knowing Plaintiff was physically disabled and wheelchair bound and had fallen out of the wheelchair onto the concrete.

105. Defendant DOE Deputies acted with a reckless disregard for the rights of Plaintiffs Norman Gainer, Sharon Haywood, Rebecca Gainer, and William Roper when Defendant DOE Deputies held Plaintiffs at gunpoint in the front yard of their family home and forced Plaintiffs Sharon, Rebecca, and William to give statements at the station under the threat arrest.

106. Defendants' aforementioned conduct constituted interference and attempted interference, by threats, intimidation and coercion, with Decedent's and Plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

and laws of the United States and the State of California, in violation of section 52.1 of the California Civil Code.

107.   As a direct and proximate result of Defendants' violation of section 52.1 of the California Civil Code, Decedent and Plaintiffs were deprived of their constitutional rights and suffered damages, as set forth herein.

108.   Plaintiffs are entitled to injunctive relief and an award of their reasonable attorneys' fees, pursuant to California Civil Code section 52.1, subdivision (h).

109.   Plaintiffs are entitled to treble damages, but in no case less than $4,000.00, and an award of their reasonable attorneys' fees, pursuant to California Civil Code section 52.1, subdivision (a).

110.   Under the provisions of California Civil Code section 52.1, subdivision (b), Defendants are liable for punitive damages for each violation of section 52.1, reasonable attorneys' fees, and an additional $25,000.00.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Survival Action: Assault/Battery)**
**(Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Ryan Gainer, and Plaintiffs SHARON HAYWOOD and REBECCA GAINER, individually, Against Defendants COUNTY, BRANDON CLANCY, WYATT EISENBREY, and DOES 1-25)**

111.   Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 110 of this Complaint.

112.   One of the foregoing claims for relief arose in Decedent Ryan's favor and Ryan would have been the Plaintiff with respect to this claim if he had survived.

113.   Defendants touched Decedent Ryan with the intention and purpose to harm or offend him when Defendants Clancy and Eisenbrey egregiously shot Decedent Ryan without just cause. Defendants Clancy and Eisenbrey shot Decedent

**COMMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

Ryan caused by their own provocation and failure to follow P.O.S.T. training for contacting persons with disabilities, after Decedent Ryan had started to calm down and no longer posed a threat to any person or deputy. Such conduct was neither privileged nor justified under statute or common law.

114.   Decedent Ryan did not consent to the touching and was fatally harmed by it.

115.   A reasonable person in Decedent Ryan's situation would have been offended by the touching.

116.   Defendants' conduct caused Decedent to experience severe pain and suffering, and the loss of life and earning capacity.

117.   Consequently, Plaintiffs have suffered the loss of life-long love, companionship, affection, comfort, support, society, care, and sustenance of Decedent Ryan, and will continue to be so deprived for the remainder of their natural lives, and further damages according to proof at the time of trial.

118.   One of the foregoing claims for relief is brought by Plaintiff Rebecca individually.

119.   Plaintiff Rebecca attempted to provide aid to her mother, Plaintiff Sharon, when Defendant DOE Deputies grabbed Plaintiff Rebecca and carried her approximately 30 feet away from Plaintiff Sharon, who was experiencing multiple seizures at the scene of the incident and confined to a wheelchair as a result of physical disabilities, and visibly amidst a medical emergency. Such conduct was neither privileged nor justified under statute or common law.

120.   Plaintiff Rebecca did not consent to the touching and was harmed by it.

121.   A reasonable person in Plaintiff Rebecca's situation would have been offended by the touching.

122.   Defendants' conduct caused Plaintiff Rebecca to experience severe pain, suffering, mental and physical anguish, and humiliation.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

123.   One of the foregoing claims for relief is brought by Plaintiff Sharon individually.

124.   After Ryan was shot by deputies, approximately 7-8 Defendant DOE Deputies attempted to lift Plaintiff Sharon off the cement after she fell out of her wheelchair due to mishandling by Defendant DOE Deputies. Plaintiff Sharon cried out in pain as Defendant DOE Deputies continued grabbing and moving Plaintiff. Defendant DOE Deputies dropped Plaintiff Sharon on the cement for a second time. Thereafter, an additional deputy grabbed Plaintiff Sharon's wheelchair from a few feet away to nearly 30 feet away on gravel. Defendant DOE Deputies then grabbed Plaintiff Sharon by the arms and legs, one deputy each carrying a limb, and carried her approximately 30 feet before attempting to force her into the wheelchair again. Plaintiff Sharon fell from the wheelchair for a third time but this time fell onto the gravel. Defendant DOE Deputies thereafter grabbed Plaintiff Sharon off the floor, and four Defendant DOE Deputies inhumanely carried Plaintiff by her limbs and forced Plaintiff into the back of patrol car, ignoring the fact that Plaintiff's breasts were completely exposed to the public.

125.   Plaintiff Sharon did not consent to the touching and was harmed by it.

126.   A reasonable person in Plaintiff Sharon's situation would have been offended by the touching.

127.   Defendants' conduct caused Plaintiff Sharon to experience severe pain, suffering, mental and physical anguish, and humiliation.

128.   The conduct alleged herein was willful, malicious, intentional, deliberate, and done with reckless disregard of Decedent's and Plaintiffs' constitutionally protected rights, welfare, and safety.

129.   The present action is brought pursuant to sections 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government Code, as public employees, Defendants DOE Deputies and DOES 1-25 are liable for

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendants DOE Deputies and DOES 1-25 were acting within the course and scope of their employment and/or agency with Defendant County. As such, Defendant County is liable in respondeat superior for the injuries caused by the acts and omissions of Defendants DOE Deputies and DOES 1-25, pursuant to section 815.2 of the California Government Code.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**
**(Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Decedent Ryan Gainer, and Plaintiffs SHARON HAYWOOD, REBECCA GAINER, and WILLIAM ROPER, individually, Against Defendants COUNTY, BRANDON CLANCY, WYATT EISENBREY, and DOES 1-25)**

130.    Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 129 of this Complaint.

131.    Defendants' conduct as described herein was outrageous.

132.    Defendants intended to cause Decedent Ryan and Plaintiffs emotional distress.

133.    Defendants acted with reckless disregard of the probability that Decedent Ryan would suffer emotional distress, knowing that Decedent Ryan was consciously present when Defendants Clancy and Eisenbrey fired at least three bullets at Decedent Ryan, causing Ryan to experience extreme physical pain and mental anguish before choking on vomit and succumbing to his gunshot wounds.

134.    Defendants acted with reckless disregard of the probability that Plaintiff Rebecca would suffer emotional distress, when Defendant DOE Deputies grabbed Plaintiff Rebecca and carried her away from her seizing, wheelchair bound mother, Plaintiff Sharon, whom Plaintiff Rebecca was attempting to provide medical aid.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

135.   Defendants acted with reckless disregard of the probability that Plaintiff Sharon would suffer emotional distress, when Defendant DOE Deputies mishandled Plaintiff Sharon, a physically disabled person confined to a wheelchair, by dropping Plaintiff Sharon on the cement and gravel at least three separate times. Defendants further acted with reckless disregard of the probability that Plaintiff Sharon would suffer emotional distress, when Defendant DOE Deputies inhumanely carried Plaintiff Sharon by her limbs and forced Plaintiff into the back of a patrol car without offering medical aid to Plaintiff Sharon. Plaintiff Sharon's breasts were fully exposed when Defendant DOE Deputies carried Plaintiff by her arms and legs in front of the public, including neighbors.

136.   Defendants acted with reckless disregard of the probability that Plaintiffs Sharon, Rebecca, and William would suffer emotional distress, when Defendant DOE Deputies aimed their department-issued firearms at Plaintiffs and forced Plaintiffs to go to the station and provide statements against their will and under the threat of arrest.

137.   Decedent Ryan and Plaintiffs Sharon, Rebecca, and William suffered severe emotional distress from Defendants' harassment and heinous conduct.

138.   Defendants' conduct as described herein was a substantial factor in causing Plaintiffs' severe emotional distress.

139.   Defendants' conduct caused Plaintiffs to suffer physical injuries, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

140.   The conduct alleged herein was done in a willful, intentional, deliberate, or reckless disregard of Plaintiffs' constitutionally protected rights, welfare, and safety.

141.   The present action is brought pursuant to sections 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

Code, as public employees, Defendants Deputies and DOES 1-25 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendants DOE Deputies and DOES 1-25 were acting within the course and scope of their employment and/or agency with Defendant County. As such, Defendant County is liable in respondeat superior for the injuries caused by the acts and omissions of Defendants DOE Deputies and DOES 1-25, pursuant to section 815.2 of the California Government Code.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### EIGHTH CAUSE OF ACTION
#### (Negligence)
**(Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Decedent Ryan Gainer, and Plaintiffs SHARON HAYWOOD, REBECCA GAINER, and WILLIAM ROPER, individually, Against Defendants COUNTY, BRANDON CLANCY, WYATT EISENBREY, and DOES 1-50)**

142.   Plaintiffs hereby reallege and incorporate the allegations set forth in paragraphs 1 through 141 of this Complaint, except for any and all allegations of intentional, malicious, extreme, outrageous, wanton, and oppressive conduct by Defendants, and any and all allegations requesting punitive damages.

143.   The present action is brought pursuant to sections 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government Code, as public employees, Defendants Clancy and Eisenbrey, and DOES 1-25, are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendants Clancy and Eisenbrey, and DOES 1-25, were acting within the course and scope of their employment and/or agency with Defendant County. As such, Defendant County is liable in respondeat superior for the injuries caused by the acts and omissions of Defendants Clancy and Eisenbrey, and DOES 1-25, pursuant to section 815.2 of the California Government Code.

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

144.   Defendants, as public employees, are liable for negligent pre-arrest tactics that precede the use of deadly force. Discharging a department issued firearm into a person is de facto deadly force.

145.   Defendants Clancy and Eisenbrey acted negligently preceding the use of deadly force against Decedent when they failed to perform a reasonable evaluation of the circumstances prior to discharging their firearms. Defendant Deputies had no credible or otherwise objectively reasonable threat to their safety or that of another deputy or person, at the time officers encountered Decedent to justify the deadly force inflicted upon him.

146.   Prior to Defendants Clancy's and Eisenbrey's arrival on scene, Plaintiffs William and Rebecca notified 911 that Decedent Ryan had calmed down. Defendant DOE Deputies knew or should have known that Ryan was fifteen years old and had autism as Defendant County deputies had responded to the Gainer Family home for mental health calls concerning Ryan in the past and without incident. Defendant Deputies should have known that shouting at a person with a disability or in the midst of a mental health crisis is contrary to standard police practices and training.

147.   Defendants were further negligent in failing to wait for backup before approaching the house to contact Ryan.

148.   Defendants' negligence was the proximate cause of Decedent's death, the direct cause being the illegal, unjustified, and, in the alternative, negligent shooting of Decedent Ryan, an autistic fifteen-year-old.

149.   Further, Defendant DOE Deputies were negligent in grabbing, carrying, and removing Plaintiff Rebecca from the front yard and away from her mother, Plaintiff Sharon, who was suffering a medical emergency and in need of aid.

150.   Defendant DOE Deputies were also negligent when they failed to call medical aid for Plaintiff Sharon who was physically disabled, wheelchair bound, and

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

experiencing seizures. Plaintiff Sharon was visibly in distress and physical pain when she fell out of her wheelchair and dropped by Defendants several times onto the cement and gravel. Defendants acted negligently by grabbing Plaintiff Sharon by her limbs and carrying her to a patrol car while her breasts were fully exposed to the public.

151.   Defendant DOE Deputies acted negligently when they aimed their firearms at Plaintiffs Norman Gainer, Sharon Haywood, Rebecca Gainer, and William Roper. Defendant DOE Deputies should have known that threatening arrest in order to compel Plaintiffs Sharon, Rebecca, and William to provide statements at the station after witnessing Defendants Clancy and Eisenbrey shoot and kill Ryan was unlawful and in violation of Plaintiffs rights.

152.   Finally, Defendants are liable for negligently failing to intervene when fellow deputies violate the constitutional rights of another.

153.   Defendants were negligent in failing to intervene as Decedent Ryan's Fourth Amendment rights were violated by the illegal and unjustified shooting of Plaintiffs' Decedent. Defendants were also negligent by failing to intervene when Defendant DOE Deputies violated the Fourth Amendment rights of Plaintiffs Sharon and Rebecca. It was clear that the uses of force against the Gainer Family were excessive and would likely cause the death of Decedent and injuries to Plaintiffs, yet none of the Defendant DOE Deputies intervened, or reasonably attempted to intervene, during the entirety of the deputies' encounter with Decedent and Plaintiffs.

154.   Decedent and Plaintiffs were harmed physically, mentally, emotionally, and financially, and Defendants' negligence was a direct and substantial factor in causing this harm.

155.   Plaintiffs suffered, and will continue to suffer, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## NINTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)
### (Plaintiffs NORMAN GAINER, SHARON HAYWOOD, REBECCA GAINER, and WILLIAM ROPER, individually, Against Defendants COUNTY, DOE Deputies, and DOES 1-25)

156. Plaintiffs reallege and incorporate the allegations set forth in paragraphs 1 through 155 of this Complaint.

157. Defendants' conduct as described herein was negligent.

158. Plaintiffs Norman, Sharon, Rebecca, and William were each within the zone of danger at the time Defendants Clancy and Eisenbrey discharged several gunshots at Decedent Ryan in the front yard of their family home. Plaintiffs were aware that their son, brother, and cousin, Decedent Ryan, suffered physical pain and anguish caused by the gunshot wounds inflicted by Defendants Clancy and Eisenbrey.

159. Defendants acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress.

160. Plaintiffs suffered severe emotional distress from Defendants' conduct.

161. The present action is brought pursuant to sections 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government Code, as public employees, Defendants Clancy and Eisenbrey, and DOES 1-25, are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendants Clancy and Eisenbrey, and DOES 1-25, were acting within the course and scope of their employment and/or agency with Defendant County. As such, Defendant County is liable in respondeat superior for the injuries caused by the acts and omissions of Defendants Clancy and

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

Eisenbrey, and DOES 1-25, pursuant to section 815.2 of the California Government Code.

162.   Defendants' conduct as described herein was a substantial factor in causing Plaintiffs severe emotional distress.

163.   Defendants' conduct caused Plaintiffs to suffer physical injuries, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

164.   The conduct alleged herein was done in a negligent or reckless disregard of Plaintiffs' constitutionally protected rights, welfare, and safety.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TENTH CAUSE OF ACTION
### (42 U.S.C. § 1983)
**(Violation of the Fourth Amendment of the U.S. Constitution – Denial of Medical Care)**
**(Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Decedent Ryan Gainer, and Plaintiff SHARON HAYWOOD, individually, Against Defendants BRANDON CLANCY, WYATT EISENBREY, and DOES 1-25)**

165.   Plaintiffs hereby reallege and incorporate the allegations set forth in paragraphs 1 through 164 of this Complaint.

166.   One of the foregoing claims for relief arose in Decedent's favor and Decedent would have been the Plaintiff with respect to his individual claims if he had survived.

167.   One of the foregoing claims for relief is brought individually by Plaintiff Sharon Haywood.

168.   42 U.S.C. § 1983 provides in part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress."

169.   Defendant DOE Deputies' purposeful denial of medical care deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

170.   Defendant Deputies purposeful denial of medical care deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Due Process clause under the Fourteenth Amendment of the United States Constitution.

171.   Defendant DOE Deputies knew that failure to provide timely medical treatment to Ryan could result in further significant injury or the unnecessary and wanton infliction of pain but disregarded that serious medical need, causing Decedent great bodily harm and eventually death.

172.   Defendant DOE Deputies knew that failure to provide timely medical treatment to Decedent Ryan could result in further exacerbation of the injures they caused by illegally shooting Decedent three times and cause an unnecessary and wanton infliction of pain. Defendant DOE Deputies disregarded Decedent for approximately 10 minutes after shooting him, causing Ryan great bodily harm, mental anguish, conscious pain and suffering, and eventual death. Thereafter, nearly seven additional marked patrol vehicles arrived at the scene prior to the arrival of an ambulance. Emergency medical personnel eventually arrived on scene and attempted to resuscitate Ryan's lifeless body by starting life-saving measures.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

173.   Defendants, while acting in the performance of their official duties, used force against Decedent Ryan that was unjustified, entirely unreasonable, and thereby excessive, such that the failure to provide Decedent Ryan access to medical care immediately thereafter was deliberately indifferent to Decedent Ryan's serious medical need and thereby shocks the conscience.

174.   In using excessive and unjustified force, and by failing to provide Decedent Ryan access to immediate medical care, Defendant DOE Deputies were acting in accordance with the widespread informal practices and customs maintained by the San Bernardino County Sheriff's Department, as elaborated upon herein.

175.   Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that failure to provide Decedent Ryan access to immediate medical care was deliberately indifferent to Decedent Ryan's serious medical need and violated clearly established law.

176.   The conduct alleged herein caused Decedent Ryan to be deprived of his civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Decedent Ryan to suffer life-threatening physical injuries, extreme conscious pain and suffering, and eventually suffered a loss of life and earning capacity.

177.   Plaintiff Sharon is physically disabled and confined to a wheelchair. Plaintiff Sharon experiences seizures in high stress situations. Plaintiff Sharon is cared for by her family, Plaintiffs Norman Gainer, Rebecca Gainer, and William Roper. Decedent Ryan was a devoted caretaker of his mom, Plaintiff Sharon, until his death.

178.   After witnessing Ryan be shot down by Defendants Clancy and Eisenbrey, Plaintiff Sharon experienced multiple seizures. Plaintiff Rebecca observed Plaintiff Sharon experiencing the medical emergency and attempted to

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

provide her mother aid. Thereafter, Defendant DOE Deputy grabbed Plaintiff Rebecca and carried her approximately 30 feet away from Plaintiff Sharon.

179.   As Plaintiff Rebecca was physically removed from tending to her other, Plaintiff Sharon fell out of the wheelchair. Instead of helping Plaintiff Sharon and securing her in the wheelchair, Defendant DOE Deputies took away the wheelchair and moved it into a patrol car.

180.   Defendant DOE Deputies then grabbed Plaintiff Sharon by her arms and legs, with one Defendant DOE Deputy holding each limb. Plaintiff Sharon cried out in pain but her cries went unanswered by Defendant DOE Deputies.

181.   Defendant DOE Deputies dropped Plaintiff Sharon multiple times on the cement and gravel while carrying Plaintiff Sharon by her limbs and forcing her into the back of a patrol car. Plaintiff's breasts were exposed to the public during the mishandling and mistreatment by Defendant DOE Deputies.

182.   At no point did Defendant DOE Deputies summon medical care for nor provide medical care to Plaintiff Sharon despite her known, obvious medical need.

183.   Defendant DOE Deputies' purposeful denial of medical care deprived Plaintiff Sharon of her right to be secure in her person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

184.   Defendant DOE Deputies' purposeful denial of medical care deprived Plaintiff Sharon of her right to be secure in her person against unreasonable searches and seizures as guaranteed to Plaintiff Sharon under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

185.   Defendant DOE Deputies knew that failure to provide timely medical treatment to Plaintiff Sharon could result in further significant injury or the unnecessary and wanton infliction of pain but disregarded that serious medical need, causing Plaintiff Sharon great bodily harm.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

186.   Defendants, while acting in the performance of their official duties, used force against Plaintiff Sharon that was unjustified, entirely unreasonable, and thereby excessive, such that the failure to provide Plaintiff access to medical care immediately thereafter was deliberately indifferent to Plaintiff's serious medical need and thereby shocks the conscience.

187.   In using excessive and unjustified force, and by failing to provide Plaintiff Sharon access to immediate medical care, Defendant DOE Deputies were acting in accordance with the widespread informal practices and customs maintained by the San Bernardino County Sheriff's Department, as elaborated upon in herein.

188.   Defendants, acting under the color of statute, ordinances, regulations, customs and usages of the State, knew that failure to provide Plaintiff Sharon access to immediate medical care was deliberately indifferent to Plaintiff's serious medical need and violated clearly established law.

189.   The conduct alleged herein caused Plaintiff to be deprived of her civil rights that are protected under the United States Constitution. The conduct alleged herein has also legally, proximately, foreseeably, and actually caused Plaintiff Sharon to suffer physical injuries, extreme conscious pain and suffering, and mental anguish.

190.   Moreover, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent Ryan, and will continue to be so deprived for the remainder of their natural lives.

191.   Defendants' conduct alleged herein was willful, wanton, malicious, intentional, and deliberate, and was done with a reckless disregard to the constitutionally protected rights, welfare, and safety of Decedent Ryan and Plaintiff Sharon.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

## ELEVENTH CAUSE OF ACTION
### (42 U.S.C. § 12101)
**(American with Disabilities Act of 1990 - Denial of Access to Public Service)**
**(Plaintiffs NORMAN GAINER and SHARON HAYWOOD, as Successors-in-Interest to Decedent Ryan Gainer, and Plaintiff SHARON HAYWOOD, individually, Against Defendants COUNTY, BRANDON CLANCY, WYATT EISENBREY, and DOES 1-50)**

192.   Plaintiffs hereby reallege and incorporate the allegations set forth in paragraphs 1 through 191 of this Complaint.

193.   Congress enacted the ADA to "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

194.   Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

195.   One of the foregoing claims for relief arose in Decedent's favor and Decedent would have been the Plaintiff with respect to his individual claims if he had survived.

196.   Decedent Ryan was an individual with a disability under the ADA. 42 U.S.C. § 12102. Ryan was fifteen years old and autistic. His disabilities substantially limited one or more major life activities, including learning, concentration, thinking, and interacting with others.

197.   One of the foregoing claims for relief is brought individually by Plaintiff Sharon Haywood.

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

198.   Plaintiff Sharon Haywood is an individual with a disability under the ADA. 42 U.S.C. § 12102. Plaintiff Sharon is physically disabled, and wheelchair bound. Plaintiff Sharon requires around the clock care.

199.   Defendant County of San Bernardino and San Bernardino County Sheriff's Department are all public entities within the meaning of the ADA. Defendants DOES 25-50 are officials responsible for running and/or supervising the operations of their respective public entities. 42 U.S.C. § 12131(1).

200.   Defendant County is legally responsible for all violations of the ADA committed by Defendants County and/or Sheriff's Department in the course of performing law enforcement duties and operations.

201.   Defendants at all times have known or should have known that Decedent Ryan was a teenager with disabilities, including autism, and Plaintiff Sharon is an individual with physical disabilities and wheelchair bound, and required reasonable accommodations.

202.   The acts and omissions of Defendants caused Decedent Ryan to suffer irreparable harm and loss of life, and he and similarly situated persons have no adequate remedy at law. Moreover, the acts and omissions of Defendants have caused and will continue to cause Plaintiff Sharon to suffer irreparable harm, and she has no adequate remedy at law.

203.   Under the ADA, Plaintiffs are entitled to attorneys' fees and costs as appropriate and permitted by law, pursuant to 42 U.S.C. § 12205.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

///

///

///

///

///

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

## TWELFTH CAUSE OF ACTION
### (False Imprisonment)
### (Plaintiffs SHARON HAYWOOD, REBECCA GAINER, and WILLIAM ROPER, individually, Against Defendants COUNTY, DOE Deputies, and DOES 1-25)

204.   Plaintiffs hereby reallege and incorporate the allegations set forth in paragraphs 1 through 203 of this Complaint.

205.   Plaintiffs Sharon, Rebecca, and William were wrongfully restrained, confined, and/or detained by Defendant DOE Deputies.

206.   Defendant DOE Deputies intentionally deprived Plaintiffs Sharon, Rebecca, and William of their freedom of movement by use of physical barriers, force, threats of force, menace, fraud, and unreasonable duress.

207.   The restraint, confinement, and/or detention compelled Plaintiffs Sharon, Rebecca, and William to go to the station and provide statements against their will and under the threat of arrest, where Plaintiffs were forced to remain at the station for several hours, thereby constituting an appreciable amount of time. Plaintiff Sharon was further confined and/or detained by Defendant DOE Deputies who carried Plaintiff by her limbs and forced her into the back of a patrol car before transporting Plaintiff Sharon to the station to make a statement.

208.   Plaintiffs Sharon, Rebecca, and William did not knowingly nor voluntarily consent to their confinement.

209.   Plaintiffs Sharon, Rebecca, and William were harmed as a result of their wrongful restraint, confinement, and/or detention.

210.   Defendants' conduct was a substantial factor in causing harm to Plaintiffs Sharon, Rebecca, and William.

211.   The present action is brought pursuant to sections 820 and 815.2 of the California Government Code. Pursuant to section 820 of the California Government

COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF

Code, as public employees, Defendants DOE Deputies and DOES 1-25 are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, Defendants DOE Deputies and DOES 1-25 were acting within the course and scope of their employment and/or agency with Defendant County. As such, Defendant County is liable in respondeat superior for the injuries caused by the acts and omissions of Defendants DOE Deputies and DOES 1-25, pursuant to section 815.2 of the California Government Code.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## **JURY DEMAND**

212.   Plaintiffs hereby demand a jury trial in this civil rights action.

## **PRAYER**

WHEREFORE, Plaintiffs pray for relief as follows:

1. Compensatory damages in a sum according to proof;

2. For general damages in a sum according to proof;

3. For special damages in a sum according to proof;

4. For punitive damages in a sum according to proof, as to Defendant DOES 1-25;

5. For reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988;

6. For any and all statutory damages allowed by law;

7. For cost of suit herein incurred;

8. For Declaratory Judgment that Defendant DOE Deputies' conduct was a violated the Fourth and Fourteenth Amendments;

9. For Declaratory Judgment that Defendant DOE Deputies' conduct violated 42 U.S.C. § 12132 (Title II of the ADA);

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**

10. For Declaratory Judgment that Defendant DOE Deputies' conduct violated 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act); and

11. For such other and further relief as the Court deems just and proper.


Dated:  July 10, 2024                    **BURRIS, NISENBAUM, CURRY, AND LACY LLP**


By*:*   */s/ Julia N. Quesada*
_____
       John L. Burris
       DeWitt M. Lacy
       Julia N. Quesada
       Lena P. Andrews

       Attorneys for Plaintiffs,
       Norman Gainer, Sharon Haywood,
       Rebecca Gainer, and William Roper

**COMPLAINT FOR DAMAGES, AND FOR DECLARATORY AND INJUNCTIVE RELIEF**